**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | | |
|---|---|---|
| JENNIFER ANN HAMMONS, | ) | CV-17-74-H-DLC-JTJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  SYNOPSIS

Jennifer Ann Hammons ("Ms. Hammons") seeks disability benefits

under the Social Security Act (the "Act").  The Commission of the Social

Security Administration ("Commissioner") determined that although Ms.

Hammons has severe impairments she is capable of performing past relevant

work as a customer service representative that exists in significant numbers in

the national economy and therefore is not entitled to benefits.  The

Commissioner's determination is not supported by substantial evidence and is

based on legal error.  Therefore, Ms. Hammons's Motion for Summary

Judgment should be granted in part, and denied in part, for the reasons set

forth below.

## II.  JURISDICTION

Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g)

(2015).  The case is assigned to United States District Court Judge Dana

Christensen and referred to the undersigned to submit findings and

recommendations on dispositive motions.  (Doc. 6).  Venue is proper in the

Helena Division of the District of Montana because Ms. Hammons resides in

Fort Harrison, Montana.  (Doc. 1 at ¶2); 42 U.S.C. 405(g); Local Rule

1.2(c)(2).

## III.  STATUS

Ms. Hammons applied for Security Disability Insurance Benefits on

April 14, 2013, alleging a disability onset date of August 31, 2011.  (Doc. 6 at

194-95).  The Social Security Administration initially denied her claim in an

undated decision.  (*Id*. at 123-26).  On April 10, 2014, Ms. Hammons timely

filed a written request for a hearing before an administrative law judge

("ALJ").  (*Id*. at 134-35).  The ALJ held a hearing on October 6, 2015. (*Id.* at

40-95).

2

The ALJ rendered a decision denying Ms. Hammons's claim on March 21, 2016. (*Id.* at 16-37). Ms. Hammons timely requested that the Commissioner review the ALJ's denial of her claim. (*Id.* at 14-15). On April 28, 2017, the Appeals Council for Social Security Administration denied Ms. Hammons's request for review on April, making the ALJ's decision is the final decision of the Commissioner. (*Id*. at 1-6).

On December 8, 2017, Ms. Hammons filed an opening brief requesting the Court to reverse or remand the Commissioner's decision. (Doc. 9). On January 8, 2018, the Commissioner filed a response brief, and Ms. Hammons filed a reply brief on January 19, 2018. (Docs. 10-11).

## IV.  STANDARDS

### A.    Review

Review in this case is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Maounis v. Sheckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than

a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986).  The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## B.    Disability criteria

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy."  *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42

U.S.C. §1382(a)(3)(A)-(B)).

The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps of the inquiry are:

1.  Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id* at 954. The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five. *Id.*

# V.  BACKGROUND

## A.    Ms. Hammons's hearing testimony

At the hearing on October 6, 2015, Ms. Hammons testified that she has an associate's degree (Doc. 6 at 51) and had worked as a customer service representative, a customer service representative supervisor, and a military air cargo specialist.  (*Id*. at 30).  Ms. Hammons testified that she stopped working due to difficulties with prolonged sitting and hand numbness when typing. (*Id*. at 68).  She then attempted to go to school, but had difficulty remembering the material.  (*Id*. at 70).

Ms. Hammons lives with her husband, who is retired and does virtually all of the chores at home.  (*Id*. at 74-76).  Her husband also helps Ms. Hammons put on her shoes and assists her with dressing.  (*Id*. at 87).  Ms. Hammons tries to take her small dogs on short walks, but finds it painful.  (*Id*. at 77).  She holds on to her husband, her walker, or a grocery cart when walking, as she is prone to tripping and falling. (*Id*. at 87).  Due to symptoms in her hands, she cannot use zippers or buttons and has difficulty typing.  (*Id*. at 88).  She also stated that she cut her hair short as she is physically unable to tie her hair up or style it.  (*Id*. at 87).  She testified that she stopped driving about a year before the hearing, but that she has not surrendered her license.

(*Id*. at 80).

She testified that she suffers from  multiple sclerosis that affects her physically and mentally.  (*Id*. at 77-78).  She uses a seated walker, which helps with balance and allows her freely sit and relieve fatigue and dizziness. (*Id*. at 78).  She has a left foot drop and uses an ankle brace to prevent the foot from dragging.  (*Id*. at 79).  Her multiple sclerosis causes severe flares every four to six months that last for a few days up to a week.  (*Id*. at 80).  Ms. Hammons has neck pain that causes altered sensations in her hands, as well as back spasms, which are only relieved by lying in a flat position.  (*Id*. at 81-82).  Finally, Ms. Hammons testified that her multiple sclerosis causes bladder issues, which have resulted in frequent restroom breaks and periodic incontinence.  (*Id*. at 93).

### B.    ALJ's determination

At step one, the ALJ determined that Ms. Hammons had not engaged in substantial gainful activity since her alleged disability onset date of August 31, 2011.  (*Id*. at 21).

At step two, the ALJ found that Ms. Hammons has the following severe impairments: multiple sclerosis, fibromyalgia, torticollis, and major depressive disorder (20 CFR 404.1520(c)).  (*Id*. at 21).

At step three, the ALJ found that Ms. Hammons did not have an impairment or combination of impairments that met or were medically equal to one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.152(d), 404.1525 and 404.1526).  (*Id*. at 23).

At step four, the ALJ determined that Ms. Hammons had the residual functional capacity to perform sedentary work except she could not climb ropes, ladders, or scaffolds; could occasionally climb stairs and ramps; could occasionally balance, stoop, crouch, kneel and craw; could not be exposed to vibration; could frequently but not continuously handle and finger bilaterally; could occasionally reach overhead bilaterally; occasionally use foot controls bilaterally; and occasionally be exposed to temperature and humidity extremes.  The ALJ further determined that mentally Ms. Hammons could understand, remember and carry out detailed but not complex instructions.  (*Id*. at 24).

At step five, the ALJ determined Ms. Hammons is capable of performing past relevant work as a customer service representative supervisor because this work does not require the performance of work-related activities precluded by the  RFC the ALJ assessed her as possessing.  (*Id.* at 28).

### C.    Ms. Hammons's position

Ms. Hammons argues the Commissioner's decision should be reversed and remanded because the decision is based on the following legal errors:

1.     The ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Ms. Hammons's functional capacity, (Doc. 9 at 16);

2.     The ALJ failed to properly evaluate Ms. Hammons's credibility, (*Id.* at 21);

3.     The ALJ failed to properly consider the VA disability decision, (*Id.* at 23);

4.     The ALJ failed to present an appropriate hypothetical questions to the vocational expert.  (*Id.* at 25).

**D.     The Commissioner's position**

The Commissioner argues that:

1.     The ALJ reasonably evaluated Dr. Chronister's opinion, (Doc. 10 at 5);

2.     The ALJ reasonably determined that Ms. Hammons was not credible, (*Id*. at 10);

3.     The ALJ reasonably considered Ms. Hammons's VA rating, (*Id*. at 16); and

4.     The ALJ's hypothetical question to the vocational expert was appropriate and only included credible limitations, thus, the ALJ's FRC determination was supported by substantial evidence.  (*Id*. at 18).

## VI.  ANALYSIS

### A.      Weight of medical opinion evidence

#### 1.      Legal standard

In assessing a disability claim, an ALJ may rely on "opinions of three
types of physicians: (1) those who treat the claimant (treating physicians); (2)
those who examine but do not treat the claimant (examining physicians); and
(3) those who neither examine nor treat the claimant (nonexamining
physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The
deference the Commissioner affords physician opinions is dependant upon the
classification of the physician.  The opinion of a treating doctor is generally
entitled to the greatest weight.  *Id.* ("As a general rule, more weight should be
given to the opinion of a treating source than to the opinion of doctors who do
not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The opinion of
an examining physician is, in turn, entitled to greater weight than the opinion
of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is
employed to cure and has a greater opportunity to know and observe the
patient as an individual.' " *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d
595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th
Cir. 1987)). "However, the opinion of the treating physician is not necessarily

conclusive as to either the physical condition or the ultimate issue of disability." *Id.*; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability").

Opinions of treating physicians may only be rejected under certain circumstances. *Lester*, 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick,* 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an

11

examining physician or a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

### 2.   Analysis

#### a.   Medical opinion evidence

Ms. Hammons established treatment with Stacy Chronister, D.O., on July 26, 2013. (Doc. 9 at 5-6). The ALJ gave Dr. Chronister's opinions "little weight" because her physical evaluations of Ms. Hammons were "consistently unremarkable" and because Ms. Hammons was consistently released "without limitations." (Doc. 6 at 30)).

Ms. Hammons argues that this was in error because Dr. Chronister's opinions were supported by MRI findings and clinical evidence of falling, neuropathic pain in the neck, legs, feet, and hands, evidence of a gait dysfunction, and decreased memory. (Doc. 9 at 17 (citing Doc. 6 at 1887-88)). Ms. Hammons argues that the ALJ substituted his lay interpretation of these findings for those of Dr. Chronister. (Doc. 9 at 17-18). Also, Ms. Hammons argues that the ALJ gave more weight to the opinions of non-examining sources, who reviewed an incomplete medical record. (*Id*. at 18-19). Rather,

she argues that Dr. Chronister's opinions were uncontroverted and based on the whole record, and should have been given controlling weight.  (*Id*. at 19).

The Commissioner argues that the ALJ properly discounted Dr. Chronister's opinion because it was contradicted by the medical record, which includes her own findings, and by her decision to release Ms. Hammons "without limitation" following her examination.  (Doc. 10 at 5-6; *see* Doc. 6 at 30).  Thus, she argues, the ALJ had a specific and legitimate reason supported by substantial evidence to give Dr. Chronister's opinions little weight.  (*Id.*)

On September 24, 2015, Dr. Chronister issued a Disability Impairment Questionnaire which concluded that Ms. Hammons was not "mentally or physically capable of employment" due to her worsening multiple sclerosis. (Doc. 6 at 1887-91).  She stated that Ms. Hammons suffered from falling, gait dysfunction, and neuropathy related to her multiple sclerosis, and that Ms. Hammons suffered from "constant" pain in her neck, legs, feet, and hands.  (*Id*. at 1887-88).  She stated that during a normal eight-hour workday, Ms. Hammons could only perform a job in a seated position for less than one hour and could only stand and walk for less than one hour, and that it was medically necessary to avoid constant sitting and to move around every half hour.  (*Id*. at 1889).  She stated that Ms. Hammons had significant limitations in reaching,

handling, or fingering, and could "never or rarely" grasp or reach with either her hands or arms. (*Id*. at 1890). Dr. Chronister also stated that Ms. Hammons's symptoms would worsen if placed in a work environment, and that she would need to take unscheduled breaks at least every hour and would also have to rest for one to two hours before returning to work. (*Id.* at 1890). Ms. Hammons would also be absent from work due to her impairments or treatment more than three times per month on average. (*Id*. at 1891). Finally, Dr. Chronister stated that Ms. Hammons's symptoms and limitations applied since January 1, 2009. (*Id*. at 1891).

On September 16, 2013, Hector Ortiz, M.D. performed a disability consultative examination on Ms. Hammons on behalf of the Social Security Administration. (Doc. 6 at 600-07). The ALJ described Dr. Ortiz's report in detail. (*Id*. at 26-27). "Dr. Ortiz diagnosed a history of fibromyalgia, a history of torticollis, cervicalgia, and radiculopathy of the arms." (*Id*. at 27). However, the ALJ noted that "[t]he remainder of the physical examination was unremarkable." (*Id*.) Ultimately, the ALJ concluded that the opinion evidence of the State agency medical consultants some weight, but found that Ms. Hammons "is further limited as determined by the symptoms of her multiple

sclerosis and her alleged pain, but not to the extent alleged." (*Id*. at 30).

Therefore, the Court finds that Dr. Chronister's opinion is controverted, and thus the ALJ must provide specific and legitimate reasons to discount her medical opinion that are supported by substantial evidence. The opinion of a non-examining state agency physician is sufficient to establish a conflict among the medical opinions, so long as other evidence in the record supports it. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). Additionally, "[c]ontradictions between a doctor's opinion and that doctor's own clinical notes and observations is a valid basis to reject the doctor's opinion." *Bayliss*, 427 F.3d at 1216.

Ms. Hammons argues that the opinions of the non-examining state agency physicians are not persuasive because they were given well-before the records were complete. The State agency physicians reviewed Ms. Hammons's file on September 18, 2013, and again on February 11, 2014, which she argues only included records through December 2013. (Doc. 9 at 18; *see* Doc. 6 at 102-04, 117-18). These records, however, are substantial evidence that Ms. Hammons was not disabled as of her onset date of August

31, 2011 through the time of the agency physicians' record review.  This

evidence supports a conflict in the medical records.  *Widmark*, 454 F.3d at

1066 n.2.

      The Court finds that the ALJ provided specific and legitimate reasons to

discount Dr. Chronister's medical opinions that are supported by substantial

evidence.  The ALJ determined that Dr. Chronister's opinion was due "little

weight" because of the "consistently unremarkable physical examinations, as

well as the consistent releases without limitations[.]" (Doc. 6 at 30).  In

contrast to the severe limitations as stated in Dr. Chronister's September 2015

disability opinion, the ALJ cited several instances from the medical record

which show inconsistency.  Ms. Hammons stated her pain was 0/10 on March

25, 2014; that she was "doing well post surgery and was pain free" on April

23, 2014; she had repeatedly "unremarkable" physical examinations; and Ms.

Hammons stated that "her condition is now stable with treatment" when

referring to her multiple sclerosis.  (*Id*. at 28-29).

> Regarding the alleged painful spasms in her back, records from the
> Naval Hospital Corpus Christi shows that the claimant reported that
> Cymbalta was helpful for her pain.  She often stated reported[sic] no or
> only mild pain.  Physical examinations have been unremarkable, and she
> has consistently been released without limitations.

16

(*Id*. at 29).

Ms. Hammons argues that Dr. Chronister's "vague notes" that she was released without limitations "is so ambiguous as to render the statement useless. The doctor does not connect the statement to a capacity to work without limitations, or any other context that would suggest Ms. Hammons has no limitations whatsoever." (Doc. 11 at 2-3). Even if the statement is ambiguous, the ALJ's interpretation of the record is not unreasonable, and a reasonable mind could accept the ALJ's conclusions. *See Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). The Court will not dismiss the ALJ's interpretation if it is reasonable.

Therefore, the Court finds that the ALJ provided specific, legitimate reasons to discredit Dr. Chronister's controverted opinion though the opinions of the State agency physicians and her own conflicting examination and notes, both of which are supported by substantial evidence in the record.

## b.    Evaluating Ms. Hammons's RFC

The ALJ assessed Ms. Hammons as having "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)" with specific exceptions. (Doc. 6 at 24). In assessing Ms. Hammons's sedentary

RFC, the ALJ rejected Dr. Chronister's opinion of total disability, as well as the State agency medical consultants' opinions of a "light" RFC.  The ALJ found "that the claimant is further limited as determined by the symptoms of her multiple sclerosis and her alleged pain, but not to the extent alleged."  (*Id.* at 30).

Ms. Hammons argues that the ALJ's RFC assessment is therefore unsupported because by rejecting Dr. Chronister's opinion and disagreeing with the conclusions of the non-examining state agency consultants, he left an "evidentiary deficit" which he then filled with his lay opinion.  (Doc. 9 at 20-21); *see Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010).  Thus, "it is unclear what evidence the ALJ relied on" in assessing Ms. Hammons as having a RFC to perform sedentary work with limitations.  (*Id.*)

However, the Commissioner argues that an ALJ is not required to rely on discounted medical source evidence or testimony, as Dr. Chronister's medical opinion was given little weight.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  The Commissioner cites to the Tenth Circuit, which has held that an ALJ is not required by the regulations to find "a direct correspondence between an RFC finding and a specific medical

opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d

1285, 1288 (10th Cir. 2012).

The ALJ is required to provide a narrative in assessing the claimant's

RFC.  According to SSR 96-8P (S.S.A. July 2, 1996):

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

The rule also states that "[t]he RFC assessment must always consider and

address medical source opinions.  If the RFC assessment conflicts with an

opinion from a medical source, the adjudicator must explain why the opinion

was not adopted." *Id.*

The SSR does not say that an ALJ needs to directly adopt the RFC of

one of the medical providers.  Instead, the rule states that the ALJ must provide

a narrative detailing the claimant's condition and abilities, and must consider

all medical evidence and to the extent he rejects the medical opinions, must

explain his reasons for doing so.  Here, the ALJ provided a narrative discussion

supporting the ultimate RFC, supported by evidence in the record as well as

Ms. Hammons's testimony.  (Doc. 6 at 24-30).  Additionally, the ALJ duly

considered all medical source opinions, but rejected them and provided his

reasoning, which was explained in the narrative.  (*Id*. at 30).  Therefore, the

Court finds that the ALJ did not err in assessing Ms. Hammons RFC.

### B.     Ms. Hammons's credibility

#### 1.     Legal standards

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ

must determine whether the claimant has presented objective medical evidence

of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.' "  *Garrison v. Colvin*, 759 F.3d 995, 1014

(9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

2007).  In this analysis, the claimant is not required to show "that her

impairment could reasonably be expected to cause the severity of the symptom

she has alleged; she need only show that it could reasonably have caused some

degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

1996).  Nor must a claimant produce "objective medical evidence of the pain
or fatigue itself, or the severity thereof."  *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no
evidence of malingering, "the ALJ can reject the claimant's testimony about the
severity of  her symptoms only by offering specific, clear and convincing
reasons for doing so."  *Id.* at 1014-15 (citing *Smolen*, 80 F.3d at 1281); *see also
Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an
ALJ makes a finding of malingering based on affirmative evidence thereof, he
or she may only find an applicant not credible by making specific findings as
to credibility and stating clear and convincing reasons for each").  This is not
an easy requirement to meet: "The clear and convincing standard is the most
demanding required in Social Security cases."  *Garrison,* 759 F.3d at 1015
(citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.
2002).  At the same time, the ALJ is not "required to believe every allegation
of disabling pain, or else disability benefits would be available for the asking, a
result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Id.* (citing *Fair v. Bowen*,
885 F.2d 597, 603 (9th Cir. 1989)).

When evaluating a claimant's subjective symptom testimony, the ALJ

must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). The ALJ must identify which testimony he found not credible and why. *Id.* The ALJ's credibility determination must set forth findings sufficiently specific to permit the court to concluded that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id.* (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

22

2.      **Analysis**

The ALJ concluded that Ms. Hammons met the first part of the two-step

analysis in determining that her "severe medically determinable impairments

could reasonably be expected to cause the alleged symptoms."  (Doc. 6 at 25).

However, the ALJ found that Ms. Hammons did not meet the second step in

concluding that her "statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely credible for the reasons

explained in this decision."  (*Id.*)

Ms. Hammons argues that the ALJ failed to provide "clear and

convincing reasons" for finding her testimony not credible because he "failed

to provide any analysis to support his conclusion that Ms. Hammons'

statements regarding her symptoms and limitations are 'not entirely credible.'"

(Doc. 9 at 22-23 (citing Doc. 6 at 25)).  Ms. Hammons contends that while the

ALJ did summarize the evidence in the record, he relied on boilerplate

language and discredited her testimony without analyzing her credibility with

clear and convincing reasons.  (*Id.*).

The Commissioner argues that the ALJ "described [Ms. Hammons's]

testimony in detail" and "discussed the medical record at length."  (Doc. 10 at

12).  The Commissioner states that the ALJ reached her conclusion that Ms.

Hammons could perform limited sedentary work based on "valid reasons,

supported by substantial evidence[.]"  (*Id.* at 13).

 As stated above, "the ALJ can reject the claimant's testimony about the

severity of  her symptoms only by offering specific, clear and convincing

reasons for doing so."  *Garrison,* 759 F.3d at 1014-1015.  The ALJ must also

"specifically identify" what testimony is not credible and what evidence

undermines the claimant's complaints; general findings are insufficient.

*Smolen*, 80 F.3d at 1284.  The ALJ's general summary of the evidence which

may contradict Ms. Hammons's testimony is not a sufficient explanation or

analysis to support the rejection of Ms. Hammons's subjective statements; the

ALJ must tie the evidence cited to the credibility determination.  *See Michaels*

*v. Colvin*, 2015 WL 3771468, *7 (E.D. Wash June 17, 2015).

 Therefore, the Court finds that the ALJ erred in not providing specific,

clear and convincing reasons for determining that Ms. Hammons's testimony

was not entirely credible.  On remand, the ALJ must reevaluate Ms.

Hammons's testimony and, should the ALJ find her testimony not credible,

must cite to what specific testimony the ALJ finds not credible and provide

support with specific evidence from the record.

### C.      VA disability determination

#### 1.      Legal standard

"[A]n ALJ must ordinarily give great weight to a VA determination of
disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).
While some Circuit Courts grant the VA determination only some weight, the
Ninth Circuit grants VA determinations great weight because of the marked
similarity of the two disability programs. *Id.* "Both programs evaluate a
claimant's ability to perform full-time work in the national economy on a
sustained and continuing basis; both focus on analyzing a claimant's functional
limitations; and both require claimants to present extensive medical
documentation in support of their claims." *Id.* However, because the VA and
Social Security Administration's disability criteria are not identical, "the ALJ
may give less weight to a VA disability rating if he gives persuasive, specific,
valid reasons for doing so that are supported by the record." *Id.* The fact that
the governing rules of the VA and Social Security Administration differ is not
a specific, valid reason for discounting the VA disability determination. *Berry
v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010).

2.      **Analysis**

The ALJ gave "some weight to the VA opinions [Doc. 6 at 544-74,
1736-37], but not significant weight, because they are not fully consistent with
the medical record as discussed above."  (Doc. 6 at 30).  The ALJ considered
Ms. Hammons's status as a military veteran, and concluded with the following
sentence: "A determination of disability by another governmental agency
based on its rules and not of the Social Security Administration (20 CFR
404.1504 and 404.1512, and SSR 06-03p)."  (*Id.*)

The Court is unsure precisely what the ALJ meant in the final sentence
of this section.  Likely, given the citation to 20 CFR 404.1504, the ALJ meant
to say that another government agency's disability determination "is not
binding" in a Social Security context.  While the ALJ is correct that a VA
determination is not binding, the Ninth Circuit ordinarily requires an ALJ to
give a VA determination great weight because of its marked similarity to the
Social Security Disability Determination.  *McCartey*, 298 F.3d at 1076.

The Commissioner argues that the ALJ did not err in giving the VA
determination "only some weight" because "it was inconsistent with the
previously discussed medical record and based on different rules than the

Social Security Administration." (Doc. 10 at 16). In order to give less weight

to a VA determination, the ALJ must state "persuasive, specific, valid reasons

for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

The Ninth Circuit has held that the fact that the two determinations are based

on different tests is not a specific or valid reason. *Berry*, 622 F.3d at 1236.

Therefore, the Court must decide whether the alleged inconsistencies in the

medical record suffice as a persuasive, specific, and valid reason to discredit

the VA determination that Ms. Hammons's total disability permanent nature

rating which resulted from her service-connected conditions.

The Court finds that the ALJ did not provide "persuasive, specific, valid

reasons for doing so that are supported by the record" for not giving the VA's

disability determination great weight. The ALJ generally summarized the

record and concluded that the VA determination was "not fully consistent with

the medical records as described above." (Doc. 6 at 30). The ALJ erred in

giving the VA's disability determination less than great weight because the

ALJ did not provide "persuasive, specific, valid reasons" for doing so.

On remand, the ALJ must give the VA Disability Determination

appropriate weight, in light of the reasoning above, and may not rely on the

argument that the two governmental agencies have different rules of procedure as a specific or valid reason to discredit the VA Determination.

### D.    Hypothetical questions to vocational expert

The ALJ may ask the vocational expert hypothetical questions to establish whether someone with the claimant's limitations will be able to secure employment in the national economy. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Hypothetical questions must set out all the limitations and restrictions of the particular claimant. *Gallant v. Heckler*, 725 F.2d 1450, 1456 (9th Cir. 1984); *see also Buck v. Berryhhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). However, the ALJ is only required to include limitations that the ALJ finds to be credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Ms. Hammons argues that the ALJ's hypothetical to the vocational expert failed to accurately describe all of her mental limitations. (Doc. 9 at 25). "The ALJ found Ms. Hammons has moderate difficulties in concentration, persistence, or pace. [Doc. 6 at 25]. However, the hypothetical

relied on by the ALJ only limited Ms. Hammons mentally to understand, remember, and carry out detailed, but not complex instructions [Doc. 6 at 89-90]." (*Id.*)  As the Commissioner points out, however, Ms. Hammons does not specify what additional limitations the ALJ should have included in the hypothetical related to her "moderate difficulties."  Therefore, Ms. Hammons has failed to meet her burden of demonstrating error on the part of the ALJ. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

Furthermore, the Commissioner argues that Ms. Hammons's argument conflates the ALJ's analysis of steps two and three with that of steps four and five, and that the ALJ properly discounted Ms. Hammons's mental difficulties in determining her RFC, and therefore the hypothetical  "appropriately included only credible limitations 'based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations.' " (Doc. 10 at 18-19 (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001))).  As stated above, the ALJ did not err in assessing Ms. Hammons's RFC.  Therefore, the ALJ's reliance on the hypothetical posed to the vocational expert was appropriate and does not constitute error.

29

## VII.  CONCLUSION

The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017).  "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" for further proceedings.  *Id.*  (citing *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).

Based on the foregoing, the Court recommends that the case be remanded for further proceedings consistent with these Findings and Recommendations.

The Court **FINDS**:

1.    The ALJ did not commit legal error in discrediting the controverted opinion of the treating physician or assessing Ms. Hammons's RFC.

2.    The ALJ erred in determining that Ms. Hammons was not entirely credible without providing specific, clear and convincing reasons for doing so that are supported by substantial evidence.

3.    The ALJ erred in giving little weight to Ms. Hammons's VA disability determination without providing persuasive, specific, valid reasons for doing so that are supported by substantial evidence.

4.    The ALJ's hypothetical question to the vocational expert was not

in error be because it included the limitations he found to be credible.

The Court **RECOMMENDS**:

1.      The Court should remand this case for the ALJ to reexamine Ms. Hammons's credibility in light of the foregoing.

2.      On remand, the ALJ should give great weight to Ms. Hammons's VA disability determination, or provide persuasive, specific, valid reasons supported by the record for giving little weight to the VA determination.

3.      Ms. Hammons's Motion for Summary Judgment (Doc. 9) should be granted in part, and denied in part.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 31st day of May, 2018.

John Johnston
United States Magistrate Judge